UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **BRENDA K. MOEDING,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:19-CV-432-SNLJ |
| ) | |
| **ANDREW M. SAUL[1],** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

The Commissioner of the Social Security Administration denied plaintiff Brenda Moeding's application for Disability Insurance Benefits under Titles II and XVI of the Social Security Act. Plaintiff now seeks judicial review (#18). The Commissioner opposes the motion (#23), and the issue is ripe. As discussed below, the Commissioner's decision is supported by substantial evidence on the record as a whole and is affirmed.

### I. Procedural History

Plaintiff Moeding was born in 1965. Most recently, she worked as a shirt presser from July 2013 until May 2015. She protectively filed an application for disability insurance benefits on May 28, 2015 and for Social Security Income on September 15, 2015. Plaintiff's claims were denied on February 29, 2016, and plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on

---

[1] After this case was filed, Saul was confirmed as the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Saul is substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

November 9, 2017, and the ALJ denied plaintiffs claim in a decision dated April 18, 2018.

In March 2015, the plaintiff had an MRI of the lumbar spine which showed some mild changes of facet arthropathy and some spinal canal narrowing. The imaging also showed that the vertebral alignment was satisfactory, vertebral bodies appeared intact throughout, and bone marrow signal appeared unremarkable. The plaintiff also had an MRI of the cervical spine in March 2015 which showed mild posterior bulge, mild changes of facet arthropathy, some narrowing of exit foramen, and some reduction of disc space, but otherwise unremarkable findings. Plaintiff also had an MRI of her right shoulder at that time. That MRI showed effusion in her shoulder joint, changes consistent with full thickness tear of the supraspinatus tendon.

Plaintiff had a bilateral nerve root injection in May and July 2015 for her lower back pain. During her July 2015 exam, she was found to have a supple neck, normal gait and station, and normal cranial nerves.

Plaintiff's rotator cuff tear was treated with injections in July 2015. Although she had limited range of motion, she had reasonable strength with rotation and abduction. Plaintiff opted to have rotator cuff repair surgery, which was performed in August 2015. At her postoperative follow-up examination, she reported she was feeling good and that the pain has been well controlled. She was found to be healing well, her distal motor and sensory function were normal, and she had full symmetric range of motion of the elbow.

In November 2015, plaintiff presented for an examination complaining of lower back pain. The provider noted that plaintiff had a supple neck and no other remarkable findings. She was assessed as having lumbago, displacement of discs in her lumbar spine, and degeneration of lumbar disc.

In February 2016, plaintiff presented for bilateral injections for her neck and back pain. The record shows that within 30 seconds of the procedure, her pain improved. Plaintiff continued to receive injections for her back pain and June 2016, July 2016, October 2016, and July 2017. The provider noted that plaintiff consistently experience resolution of pain within 30 seconds of the procedures.

In May 2017, plaintiff had an MRI of her lumbar spine. The MRI showed disc dehydration at L2-3 and L3-4 levels and some diffuse disc protrusion. However, there was no significant disc herniation, spinal canal stenosis, or neural foraminal narrowing indicated in the imaging. An MRI of the cervical spine in June 2017 showed straightening of the cervical spine and disc desiccation throughout the cervical spine. Imaging also showed some reduced intervertebral disc height, some spondylotic changes, and some diffuse disc protrusions .

Plaintiff returned for physical examination for her lower back pain and neck pain in June, July, and August 2017. She was found to have generally normal physical findings including normal musculoskeletal findings and normal gait and station, but she did have painful range of motion.

Plaintiff asserted she is unable to work due to osteoarthritis arthrosis, cervical and thoracic spondylosis, inflammatory arthritis, and right rotator cuff disease status post

3

surgical repair. She reported that she cannot bend over at all and cannot lift from the floor. She is not able to stand or walk for too long because of her back pain, which radiates down her left leg. She experiences pain from lying down too long. She does some walking around in between chairs but spends most of her day reclining with a heating pad. She is able to walk about half a block before needing to rest for 10 to 15 minutes. She reports that she uses a brace for her back and takes medication for her conditions. She experiences side effects from her medications including the inability to use machinery or drive while on the medication.

Regarding activities of daily living, plaintiff reported that she had difficulty dressing because of lost mobility after shoulder surgery. She reports that she is able to care for her hair, bathe, and feed herself. It hurts her to get on and off the toilet, though. She needs reminders to take care of her personal needs and grooming, but she does not need assistance or reminders to take her medication. She is able to prepare simple meals for herself but cannot sit or stand very long while preparing meals. She does not do household chores, but asks a church friend to help her. She walks outside with her dogs in the backyard occasionally. She can go out alone, and she uses public transportation. She is able to do some grocery shopping, but she asks her neighbor to lift her grocery bags. She talks on the phone to her family several times a week.

As part of her application, plaintiff reported that she had postural limitations due to her back neck and shoulder pain, but she was generally found to have normal physical examination findings, including no musculoskeletal abnormalities, normal gait and station, normal muscle strength and tone, and a supple neck. Further, the ALJ found that

4

plaintiff had alleged symptoms more severe than the pathology shown on shoulder neck and lumbar spine studies in the record. The ALJ observed that the claimant regularly presented for examination for lower back and neck pain, but she was found to have mostly unremarkable MRI findings, including no significant disc herniations, spinal canal stenosis, or neural foraminal spondylotic changes. The ALJ noted that after plaintiff's right shoulder surgery in August 2015, she reported her pain was well-controlled and she was found to have that range of motion and normal distal motor and sensory function. Such evidence, the ALJ concluded, further supports a finding that the plaintiff remains capable of performing work involving a reduced range of light exertion.

On February 10, 2016, state agency psychological consultant James W. Morgan, Ph.D., opined that there is no evidence to support that the claimants alleged depression is a medically terminable impairment. The ALJ gave Dr. Morgan's opinion great weight because it was consistent with the record as a whole. The ALJ found that although plaintiff had alleged disability on the basis of depression, the record did not contain a diagnosis of that condition nor does the record indicate the plaintiff was taking any medication or see any treatment for depression.

A vocational expert also testified at the hearing.

The Administrative Law Judge concluded on April 18, 2018 that plaintiff was not under a disability as defined in the Social Security Act. On January 9, 2019, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

II.    **Disability Determination—Five Steps**

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging

for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. The ALJ's Decision

At Step One, the ALJ found plaintiff met the insured status requirements through the relevant period, and she had not engaged in substantial gainful activity since May 15, 2015. At Step Two, the ALJ found plaintiff suffers from the following severe impairments: osteoarthritis, cervical spondylosis, thoracic spondylosis, inflammatory arthritis, and right rotator cuff disease status post surgical repair. (Tr. 41.)

8

At Step Three, the ALJ concluded plaintiff does not have an impairment or combination of impairments that meets or equals one of the presumptively disabling impairments listed in the regulations.

Next, in Step Four, the ALJ determined plaintiff's RFC. The ALJ found that plaintiff

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except this claimant can never climb ladders, ropes, or scaffolds. This claimant can occasionally climb ramps and stairs and can occasionally stoop, kneel, crouch, and crawl. This claimant can frequently reach. The claimant must avoid concentrated exposure to extreme cold, excessive vibration, dangerous machinery, and unprotected heights.

(Tr. 20). As part of this determination, the ALJ found that the objective evidence does not corroborate the plaintiff's allegations.

Based on this RFC determination, the ALJ determined plaintiff is able to perform her prior work as a shirt presser.

At Step Five, however, the ALJ also analyzed whether plaintiff can successfully adjust to other work. The ALJ relied on vocational expert ("VE") testimony to determine whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and RFC. The VE testified the plaintiff would be able to complete her past work, as its demands would not exceed her RFC. The VE also testified that plaintiff would be able to perform the requirements of other jobs, as well, for example: folding machine operator and routing clerk. The ALJ then found these jobs exist in significant numbers in the national economy and concluded plaintiff is not disabled.

## IV. Standard of Review

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.* "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992). In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ—even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

## V. Discussion

Plaintiff's primary argument is that the ALJ failed to fully and fairly develop the record. Specifically, plaintiff contends the ALJ should have obtained a medical opinion to address plaintiff's physical ability to function in the workplace and to support the RFC

assessment during the period of disability. This Court disagrees. "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Winn v. Comm'r, Soc. Sec. Admin*, 894 F.3d 982, 987 (8th Cir. 2018). The Eight Circuit has repeatedly stated that the ALJ is not required to support her opinion with a specific medical opinion. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016); *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). An ALJ is permitted to issue a decision without obtaining additional medical evidence, so long as other evidence in the record provides a sufficient basis for that decision. *Kammann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).

Plaintiff appears to argue that because she experienced symptoms during the relevant period, and received treatment for those symptoms, the ALJ should have found her disabled. The ALJ determined that plaintiff's impairments are not as limiting as she alleges. Regardless, the ALJ recognized the ongoing nature of her conditions, discussed them in the decision, and accounted for her credible limitations in the RFC. Plaintiff also speculates that the Court should assume that her providers believed her pain was "more severe" than the ALJ believed, but this is not proper argument. Plaintiff did not ask those providers to submit source statements to support any such assumption in the Record, and her insistence that the Court make such assumptions now is pure speculation.

Plaintiff's arguments fail because the ALJ's decision was supported by substantial evidence. The objective medical evidence failed to support plaintiff's allegations. Her symptoms responded generally well to treatment, and her daily activities were more

extensive than one would expect of a disabled person. For example, the ALJ cited the following evidence:

- Lumbar and cervical MRIs in March 2015 showed plaintiff's spine was in satisfactory alignment with otherwise mild or unremarkable findings.

- Plaintiff's examination in July 2015, before her rotator cuff surgery confirm that she maintained a supple neck, reasonable strength with rotation, normal distal motor and sensory function, normal gait and station, and normal cranial nerves.

- In August 2015, plaintiff's post-surgical report indicated she was healing well with no complications and had full elbow range of motion.

- In October through December 2015, plaintiff's examination findings were generally normal, including indications she had a supple neck and walked with a normal gate.

- In February 2016, following injection therapy, plaintiff ambulated with no evidence of neurologic compromise.

- In May 2017, a lumbar MRI showed no significant disc herniation, spinal canal stenosis, or neural foraminal narrowing, and plaintiff's exiting nerve route was unremarkable throughout her lumbar region.

- In June and July 2017, plaintiff's musculoskeletal examination findings were generally normal, including consistently normal gait and station.

- In August 2017, just three months prior to her hearing, plaintiff's providers reported normal findings with respect to her stability, joints and muscles, gait and station, and muscle strength and tone.

The record therefore raised significant questions about the consistency of plaintiff's claims. *See Bryant v. Colvin*, 861 F.3d 779, 783 (8th Cir. 2017); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). This is crucial because even when a claimant's testimony is fully accepted, her subjective claims alone are insufficient to prove disability. 20 C.F.R. §§ 404.1529(a), 416.929(a). Given the lack of other compelling evidence, the "absence of medical signs and laboratory findings" in support of plaintiff's allegations is fatal to her case. *Id.*

The ALJ also pointed to instances in which treatment proved effective in addressing plaintiff's symptoms. Her rotator cuff surgery effectively addressed her shoulder symptoms, and she receives significant benefits from injection therapy for her neck and back pain. To the extent a claimant's conditions are stable and controlled by treatment, those impairments are not disabling. *Lawson v. Colvin*, 807 F.3d 962, 965 (8th Cir. 2015).

The ALJ also noted that plaintiff's activities of daily living were not limited to the extent one would expect in light of her complaints. Plaintiff admitted she was able to live alone, took care of pets, prepared her own meals, could drive a car or use public transportation, shopped in stores, socialized, had no problems getting along with others, and did not require reminders to take her medicine as directed. Although those activities by themselves do not prove plaintiff was not disabled, they do provide substantial

evidence that her condition during the relevant period was not disabling. For example, in *Julian v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016), plaintiff was not disabled where, among other things, she could prepare two-course meals, read, play Internet games, leave her apartment several times a week, visit family and friends a few times a year, and have dinner at a friend's house once or twice a month. The Eighth Circuit held those activities showed she was capable of completing simple tasks, leaving her home, and interacting with others at least on a superficial level. *Id.* An ALJ "may decline to credit the claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id.* at 1086. (Internal quotation omitted).

The ALJ's RFC determination reflects the ALJ's careful consideration of plaintiff's credible work-related limitations. Having considered the entire record and the RFC determination, as well as the testimony from the vocational expert, the ALJ found that plaintiff remained able to perform her past relevant work as a shirt presser. Plaintiff could also perform other light jobs available in the national economy. Because plaintiff's limitations did not prevent her from performing this work, the ALJ found she was not disabled.

## VI. Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara*, 590 F.3d at 610. Having found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint (#1) is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

Dated this 31st day of March, 2020.

                                           STEPHEN N. LIMBAUGH, JR.
                                           UNITED STATES DISTRICT JUDGE